21-800
*Coleman v. Grand*

# United States Court of Appeals
# For the Second Circuit

_____

August Term 2021

Argued:  May 13, 2022
Decided:  November 3, 2025

No. 21-800

_____

STEVEN DOUGLAS COLEMAN,

*Plaintiff-Appellant,*

*v.*

MARIA KIM GRAND,

*Defendant-Appellee.*[*]

_____

Appeal from the United States District Court
for the Eastern District of New York
No. 18-cv-5663, Eric N. Vitaliano, *Judge.*

_____

Before:  CHIN, SULLIVAN, and MENASHI, *Circuit Judges.*

Plaintiff-Appellant Steven Douglas Coleman, a prominent jazz saxophonist, appeals from the district court's grant of summary judgment in favor of his former pupil, Defendant-Appellee Maria Kim Grand, on Coleman's claim that Grand defamed him under New York law when she accused him of sexual harassment. Coleman's claim centers on a seven-page, single-spaced letter that Grand

_____

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

circulated to a select group of friends and colleagues in the wake of the #MeToo movement, which described the complicated sexual relationship she had with Coleman from 2011 to 2016.  After the parties cross-moved for summary judgment, the district court (Vitaliano, *J.*) dismissed Coleman's defamation claim, concluding that he failed to offer facts from which a reasonable jury could conclude that Grand acted with actual malice in making certain statements in her letter and that her letter did not contain actionable, demonstrably false statements.

On appeal, Coleman argues that the district court (1) erred in its application of New York law, (2) erroneously determined that there was no genuine issue of material fact as to whether Grand acted with actual malice, and (3) incorrectly concluded that the allegedly defamatory statements in Grand's letter were non-actionable statements of opinion rather than fact.  Because we agree with the district court that Coleman challenges only non-actionable statements of opinion, and not the disclosed facts on which those opinions were based**,** we **AFFIRM** the judgment of the district court.

Judge Menashi dissents in a separate opinion.

AFFIRMED.

> GIEL STEIN (Steven M. Richman, Elizabeth Griffin, *on the brief*), Clark Hill PLC, New York, NY, *for Plaintiff-Appellant*.
>
> MARK I. BAILEN (Katherine L. McKnight, Richard B. Raile, Baker & Hostetler LLP, Washington, DC; A. Mackenna White, Lewis Baach Kaufmann Middlemiss PLLC, New York, NY, *on the brief*), Baker & Hostetler LLP, Washington, DC, *for Defendant-Appellee*.
>
> Jared K. Carter, Cornell Law School First Amendment Clinic, Ithaca, NY, *for Amicus Curiae Michael Balter in support of Defendant-Appellee*.
>
> Katie Townsend, Bruce D. Brown, Reporters Committee for Freedom of the Press, Washington,

DC, *for Amici Curiae The Reporters Committee for Freedom of the Press and 30 Media Organizations in support of Defendant-Appellee.*

RICHARD J. SULLIVAN, *Circuit Judge*:

Steven Douglas Coleman, a prominent jazz saxophonist, appeals from the district court's grant of summary judgment in favor of his former pupil, Maria Kim Grand, on Coleman's claim that Grand defamed him under New York law when she accused him of sexual harassment. Coleman's claim centers on a seven-page, single-spaced letter that Grand circulated to a select group of friends and colleagues in the wake of the #MeToo movement, which described the complicated sexual relationship she had with Coleman from 2011 to 2016. After the parties cross-moved for summary judgment, the district court dismissed Coleman's defamation claim, concluding that he failed to offer facts from which a reasonable jury could conclude that Grand acted with actual malice in making certain statements in her letter and that her letter did not contain actionable, demonstrably false statements.

On appeal, Coleman argues that the district court (1) erred in its application of New York law, (2) erroneously determined that there was no genuine issue of material fact as to whether Grand acted with actual malice, and (3) incorrectly

concluded that the allegedly defamatory statements in Grand's letter were non-actionable statements of opinion rather than fact.[1]  Because we agree with the district court that Coleman challenges only non-actionable statements of opinion, and not the disclosed facts on which those opinions were based, we affirm the district court's judgment.

## I. Background

In November 2017, Grand emailed a letter to approximately forty of her friends and colleagues in the music industry, claiming that she had an intermittent *quid pro quo* sexual relationship with Coleman between 2011 and 2016.  Grand asserted that during this period Coleman – a prominent musician who was thirty-five years her senior – sexually harassed her and pressured her to have a sexual relationship with him in exchange for his training and mentorship as she commenced her own career as a saxophonist.  In particular, the letter asserted that Coleman routinely "pressure[d]" her to be "intimate with him" when he was

---

[1] After oral argument, Grand submitted a letter pursuant to Federal Rule of Appellate Procedure 28(j) notifying the Court that the New York Court of Appeals had granted argument to consider whether the 2020 amendments to a New York statute proscribing strategic lawsuits against public participation, also known as New York's anti-SLAPP statute, apply retroactively.  **[Doc. No. 163.]** Based on representations that the New York Court of Appeals ruling could be relevant to the issues on appeal, we reserved our decision until after the New York Court of Appeals resolved the retroactivity issue.  *See Gottwald v. Sebert*, 40 N.Y.3d 240 (2023) (holding that the 2020 amendments do not apply retroactively).

teaching her, "made" her share hotel rooms with him when they traveled for work, "relentlessly ask[ed] [her] to have sex with him" and "g[o]t really angry" when she refused, offered her work and training opportunities in exchange for sex, "would call [her] in the middle of the night and never take no for an answer," and on one occasion got into bed with her and kissed her when she was asleep despite her explicitly telling him that she did not want to sleep with him.  J. App'x at 38–40.

In recognition of the fact that her letter painted Coleman in an unfavorable light, Grand chose to refer to him as "X" throughout the letter "in order to protect [her]self from any legal repercussions."  *Id.* at 36.  And in her email circulating the letter, Grand specifically noted that she did not intend for it to be made "public" at that time because it was "legally dangerous for [her] to publish [it]."  *Id.* at 176.

In her letter, Grand acknowledged that she contributed to the unhealthy relationship and explicitly admitted that she did not "intend to cast [her]self as only a victim of the situation."  *Id.* at 36.  She acknowledged that she was "manipulative" towards Coleman because she "didn't want his attention to stop," *id.* at 37; that she "fell in love with him" and "craved his attention" during the times they were broken up, *id.* at 38; that she continued to "admire [Coleman] and

respect him immensely as a musician and an elder," *id.* at 41; and that she was "eternally grateful" to Coleman for teaching her and "value[d] the work" she did with him, *id.* at 42. Grand conceded that she had "agree[d] to sleep with [Coleman]" when such encounters occurred and at no point did she suggest that Coleman had physically coerced her to have sex with him. *Id.* at 38; *see also id.* ("[H]e *convinced* me to be intimate with him." (emphasis added)).

Grand explained that she ultimately decided to write and circulate the letter in order to "speak up about the way sexism has affected [her]," to increase "[a]wareness," and to contribute to the "conversation" sparked by the #MeToo movement. *Id.* at 36; *see also id.* at 176 (explaining, in an email, that the letter's goal was to start "a larger conversation about what's acceptable and what's not"). Grand framed the letter as a personal account of her "experience" with "sexism in the music industry." *Id.* at 176.

In October 2018, Coleman filed a complaint alleging that Grand's letter was defamatory. In his subsequent motion for summary judgment, Coleman argued that four statements in Grand's letter were provably false – namely, Grand's statements that (1) when she moved to New York in 2011, Coleman "convinced [her] to be intimate with him"; (2) she was "sexually harassed" within a

"professional relationship"; (3) the sexual harassment began in September 2013, when she "wasn't in love with him anymore" and "didn't want to be intimate with him anymore"; and (4) Coleman often "call[ed] [her] in the middle of the night and [would] never take no for an answer." *Id.* at 142–46 (emphasis and internal quotation marks omitted). Grand filed a cross-motion for summary judgment, arguing – among other things – that her letter constituted a non-actionable statement of opinion and that the content of the letter was substantially true. Coleman then filed an opposition to Grand's cross-motion for summary judgment, arguing that Grand's letter also falsely insinuated that she was "forced to go to [Coleman's] hotel room" during a 2011 trip to Chicago. *Id.* at 2074 (Coleman's summary judgment opposition brief).

The district court granted summary judgment in favor of Grand on Coleman's defamation claim, finding that Coleman failed to offer facts from which a reasonable jury could conclude, by clear and convincing evidence, that Grand acted with actual malice in publishing her statements, and, alternatively, that the challenged statements were protected opinions rather than falsifiable facts.[2] The district court characterized Grand's letter as "describing her subjective

---

[2] The district court also granted Coleman's motion for summary judgment on Grand's defamation and intentional infliction of emotional distress counterclaims, which Grand does not appeal.

experience" and "sharing personal opinions on a difficult relationship and related societal issues," thereby constituting a statement of "opinion supported by disclosed facts." Sp. App'x at 23. Coleman now appeals, arguing that the district court erred in its application of the actual-malice standard and in finding that Grand's statements were non-actionable opinions as a matter of law.

## II. DISCUSSION

We review a district court's legal conclusions and grant of summary judgment *de novo*, *see Shakhnes v. Berlin*, 689 F.3d 244, 250 (2d Cir. 2012), "construing all facts in favor of the nonmoving party," *In re Sept. 11 Litig.*, 802 F.3d 314, 328 (2d Cir. 2015). "Whether particular words are defamatory presents a legal question to be resolved by the courts in the first instance." *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (alterations adopted and internal quotation marks omitted). The parties agree that New York law governs the determination of whether Grand's statements constitute facts or opinions and have consented to its application in resolving this issue. *See id.* at 175–76 (explaining that when "no party has challenged the choice of New York libel law, all are deemed to have consented to its application").

8

To prevail on a defamation claim under New York law, a plaintiff must prove that the defendant made "a false statement, published without privilege or authorization to a third party," that "either cause[s] special harm or constitute[s] defamation *per se*." *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (App. Div. 1st Dep't 1999). New York recognizes only four types of *per se* defamation, none of which applies here: statements that (1) "imput[e] unchastity to a woman"; (2) assert that a plaintiff has a "loathsome disease"; (3) tend to injure a plaintiff in his profession by reflecting on his ability to perform or properly conduct his business; and (4) charge a plaintiff with a serious crime. *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992); *see Harris v. Hirsh*, 643 N.Y.S.2d 556, 559 (App. Div. 1st Dep't 1996) (explaining that injuries to the plaintiff in his profession are "limited" to statements "made with reference to a matter of significance and importance" to the plaintiff's professional conduct rather than "a more general reflection [of] the plaintiff's character or qualities" (internal quotation marks omitted)). Otherwise, a defamatory statement must cause actual and special harm by exposing an individual "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace," or by "induc[ing] an evil opinion of one in the minds of right-thinking persons." *Celle*, 209 F.3d at 177

(internal quotation marks omitted). To be actionable, "the statement must do more than cause discomfort or affront; [a] statement is measured not by the sensitivities of the maligned, but the critique of reasonable minds that would think the speech attributes odious or despicable characterizations to its subject." *Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014). It must also be evaluated "in the context of the. . . publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, [it is] not actionable and cannot be made so by a strained or artificial construction." *Dillon*, 704 N.Y.S.2d at 5.

It is well established that pure opinions, "no matter how offensive, cannot be the subject of an action for defamation." *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014) (internal quotation marks omitted); *see Thomas H. v. Paul B.*, 18 N.Y.3d 580, 584 (2012) (explaining that "only statements of fact can be defamatory because statements of pure opinion cannot be proven untrue"). Under New York law, such opinions come in two forms: (1) "a statement of opinion which is accompanied by a recitation of the facts upon which it is based"; and (2) "an opinion not accompanied by such a factual recitation so long as it does not imply that it is based upon undisclosed facts." *Davis*, 24 N.Y.3d at 269 (alternation adopted and internal

quotation marks omitted). In both scenarios, the statement of opinion would not be actionable as defamation because a reasonable reader would not view the opinion as a distinct factual assertion, but instead as the speaker's personal assessment of known facts. Thus, "the reader has the opportunity to assess the basis upon which the opinion was reached in order to draw the reader's own conclusions concerning its validity." *Id.* (alteration adopted and internal quotation marks omitted). For an opinion statement like this, "we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Id.* (internal quotation marks omitted).

The dispositive question is therefore "whether a reasonable reader could have concluded that the [statements] were conveying facts about the plaintiff." *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152 (1993) (alterations adopted and internal quotation marks omitted). In making this determination, courts must consider: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication . . . or the broader social context and surrounding circumstances are such as to signal readers . . . that what is being read . . . is likely to be opinion, not fact." *Davis*, 24 N.Y.3d at 270

(alterations adopted and internal quotation marks omitted). When evaluating these factors, courts are to adopt a "holistic approach" that accounts for "the content of the communication as a whole, its tone[,] and apparent purpose." *Id.* And as explained above, "a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts" is not actionable because it "is readily understood by the audience as conjecture." *Gross*, 82 N.Y.2d at 153–54.

Under these principles, we agree with the district court's characterization of the challenged statements in Grand's letter as being statements of "opinion supported by disclosed facts." Sp. App'x at 23. Grand's seven-page, single-spaced letter explained at the outset that its purpose was to tell a "more complete story" about the "emotional abuse" and "sexual[] harass[ment]" that Grand believes she suffered in her relationship with Coleman. J. App'x at 36. The letter narrates, in great detail, facts regarding Grand and Coleman's relationship that are capable of being proven true or false, leaving readers free to determine for themselves whether Grand's belief that she was sexually harassed is a fair assessment of the information provided. *See Gross*, 82 N.Y.2d at 153–54 (explaining that opinion statements that rely on undisclosed facts are actionable, while opinion statements

that rely on disclosed facts generally are not).  Grand also wrote that her letter aimed to get "everything off [her] chest" such that she would not "have anything to hide," making clear that her views were not based on any undisclosed facts.  J. App'x at 36.  Thus, reasonable readers could only have understood Grand's assessment that Coleman sexually harassed her (and similar statements of opinion) as Grand's personal characterization of the facts set forth in the letter, rather than as a distinct assertion of fact.

Accordingly, we agree with the district court that the specific statements identified by Coleman are not actionable defamation.[3]  We address them in turn.

## A.    Grand's Statement that Coleman "Convinced" Her to Be Intimate

Coleman first challenges Grand's statement that "[a]bout 6 months after [she] moved to N[ew] Y[ork] in 2011, he convinced [her] to be intimate with him." *Id.* at 142 (emphasis and internal quotation marks omitted).  Coleman argues that this statement implies that he "pressured or otherwise unscrupulously prevailed upon" Grand, which he maintains is false because Grand agreed that she initially

---

[3] In his brief on appeal, Coleman identifies certain additional statements in Grand's letter that he claims are defamatory because they referenced "sexual harassment" and claimed that "sexual relations were forced upon her in exchange for professional benefit."  Coleman Br. at 8–9.  Because Coleman did not identify these statements as false or defamatory in his submissions in the district court, we decline to consider his contentions regarding these additional statements here.  *See Radwan v. Manuel*, 55 F.4th 101, 123 n.13 (2d Cir. 2022) (declining to consider argument "because it was not raised before the district court").

approached him, acknowledged that Coleman never forced her to have sex, indicated that she had once come into his room, and told her then boyfriend that she wanted to experiment with Coleman.  *Id.* at 1395.

For starters, the assertion that Coleman "convinced [Grand] to be intimate with him," *id.* at 38,  is not sufficiently specific or defamatory to support a claim under New York defamation law.  New York law is clear that a statement must do more than cause discomfort or affront, *Chau*, 771 F.3d at 127, and nothing about the assertion that Coleman "convinced [Grand] to be intimate with him," J. App'x at 38, can be said to expose Coleman "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induce[] an evil opinion of [him] in the minds of right-thinking persons," *Celle*, 209 F.3d at 177.  The mere assertion that Coleman convinced Grand to do something against her better judgment, and to her regret, is not enough to constitute actionable defamation.

Moreover, such a statement "would clearly be understood by a reasonable [reader] to be a figurative expression of how [Grand] felt," making it a non-actionable statement of opinion.  *Springer v. Almontaser*, 904 N.Y.S.2d 765, 767 (App. Div. 2d Dep't 2010).  Indeed, the plain meaning of the word "convince"

reflects that Grand was merely explaining how she internally felt, *i.e.*, that she was ultimately persuaded by Coleman. *See Convince*, New Oxford Dictionary (3d ed. 2010) (defining "convince" as "persuade (someone) to do something").

This conclusion becomes even clearer when Grand's statement is viewed in the context of the seven-page, single-spaced letter as a whole. *See Gross*, 82 N.Y.2d at 155 (explaining that statements are to be evaluated in light of the context in which they are used). In the part of the letter that precedes the statement about how Coleman convinced Grand to be intimate with him, Grand repeatedly expresses how she "felt" in response to Coleman's various actions. *See, e.g.*, J. App'x at 36 ("He . . . made me feel intrigued, flattered, fascinated, and also afraid."); *id.* at 37 ("I felt strong attraction to who he was and what he could do. But I was not craving an intimate affair with him."); *id.* ("I was confused, flattered, and maybe slightly manipulative, to be honest."); *id.* ("I didn't want his attention to stop."); *id.* ("I kept thinking. And wondering. And feeling angry but also confused by what he had said."). The subjectiveness of Grand's feelings continues throughout the letter and underscores the conclusion that she was expressing an opinion as to the propriety of Coleman's conduct during their relationship. *See, e.g., id.* at 38 ("I fell in love with him, and I felt that I needed him in my life in order

to survive, to learn, to thrive, and to become a professional musician."); *id.* ("I was too hooked; I felt that I was useless without him and that I had no direction . . . ."); *id.* ("I felt (and still feel) that in some levels he knows me better than anyone else does."). But whether Coleman was a good or bad partner is precisely the sort of opinion statement that cannot be objectively proven and is therefore not an actionable basis for a defamation claim.

In short, the language that Coleman contests – Grand's statement that Coleman convinced her to be intimate with him – is surrounded by a litany of statements about Grand's subjective feelings throughout their relationship and various disclosed facts. No reasonable reader could conclude that such a statement, in context, is anything more than a non-actionable "statement of opinion which is accompanied by a recitation of the facts upon which it is based." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986).

## B. Characterization of Coleman's Conduct as Sexual Harassment

Coleman next takes issue with Grand's statement that she "was sexually harassed inside a professional relationship." J. App'x at 143 (internal quotation marks omitted). Coleman contends that this statement is provably false because Grand herself admitted that she "manipulated [him] to gain [a] professional

advantage." *Id.* at 1395. But Coleman again takes this statement out of context, and no reasonable reader would interpret Grand's statement that she was sexually harassed to be anything more than a statement of her opinion about the propriety of Coleman's actions as described in her letter. *See Gross*, 82 N.Y.2d at 152.

Whether conduct rises to the level of harassment – and what is meant by the term – is often a subjective inquiry that permits differing opinions among those involved in, or aware of, the alleged conduct. For this reason, some New York courts have determined that allegations of harassment are not defamatory because of the imprecision of the term. *See Springer*, 904 N.Y.S.2d at 767 (holding that a defendant's statement that she was "harassed was not an actionable statement of objective fact because it did not have a precise, readily understood meaning"); *see also Jacobus v. Trump*, 51 N.Y.S.3d 330, 338 (N.Y. Sup. Ct. 2017) (endorsing *Springer*'s holding that the term "'harassed' had no precise, readily understood meaning"), *aff'd*, 64 N.Y.S.3d 889 (App. Div. 1st Dep't 2017).

To be sure, an accusation of sexual harassment or similar misconduct can, in certain circumstances, be defamatory. For instance, a defendant's claim to "hold information" showing that the plaintiff "subjected" a woman to "sexual harassment" plainly communicates that the speaker possesses undisclosed facts

casting the plaintiff in a defamatory light. *Alianza Dominicana, Inc. v. Luna*, 645 N.Y.S.2d 28, 30 (App. Div. 1st Dep't 1996). And specific accusations of "inappropriate personal gifts," "flirtatious comments," and "unwanted physical contact" would likewise have a readily understood defamatory meaning. *Chiavarelli v. Williams*, 681 N.Y.S.2d 276, 277 (App. Div. 1st Dep't 1998). But New York law is clear that the "difficult task" of determining whether an accusation of misconduct constitutes an expression of fact or of opinion requires a case-by-case inquiry. *Alianza Dominicana, Inc.*, 645 N.Y.S.2d at 30 (internal quotation marks omitted).

Here, Grand provided the factual basis for her conclusion that Coleman sexually harassed her. For instance, Grand's letter states that Coleman would "take [Grand] to the park and practice, take [her] to meet some older musicians, take [her] out to dinner, and then get really angry when [she] would refuse to have sex." J. App'x at 39. The letter also recounts an incident where Coleman took photographs of Grand while she was sleeping, *id.* at 37, and states that Grand once woke up to Coleman "half-naked, kissing [her] on the lips," *id.* at 40. The letter further notes that Coleman once told her on tour that she "owed him a 'lifetime of p[*]ssy' for what he had taught [her]" and mentions a time where Grand texted

Coleman that she was suicidal, and he simply responded that "he looked forward to [her] breaking down so that [she] would come to him." *Id.* at 39. Grand's letter nonetheless acknowledges that Coleman broke up with her in 2013, and that she then "would desperately try to engage him, so as not to lose [his] mentorship and [her] professional relationship with him." *Id.* at 38–39. Thus, Grand supplied the factual context on which she based her assessment, as opposed to merely asserting that she was sexually harassed and thus implying the existence of undisclosed underlying facts. *See Gross*, 82 N.Y.2d at 153–54.

Critically, Coleman does not dispute those facts as such. He instead challenges Grand's conclusion that the conduct described in her letter constituted sexual harassment. But ultimately, that conclusion is a subjective one – or a legal one – and it is for the reasonable reader to make up his or her own mind as to whether the undisputed facts disclosed in Grand's letter are properly considered sexual harassment. *See Gross*, 82 N.Y.2d at 154; *see, e.g.*, *Melius v. Glacken*, 943 N.Y.S.2d 134, 136 (App. Div. 2d Dep't 2012) (holding that the defendant's characterization of the plaintiff as "an 'extortionist' who was seeking 'to extort money'" was a non-actionable expression of opinion where it was based on unchallenged, disclosed facts).

In short, Grand's statements, in context, reflect her opinion about Coleman's conduct based on a recitation of supporting facts that Coleman has not disputed. And as explained above, "a statement of opinion that is accompanied by a recitation of the facts on which it is based" is not actionable. *Gross*, 82 N.Y.2d at 153–54.

## C. Grand's Statements About the Timing of the "Harassment"

Coleman next argues that Grand defamed him when she wrote: "By . . . Sept[ember] 2013, I wasn't in love with him anymore. I didn't want to be intimate with him anymore. That period is when the sexual harassment started." J. App'x at 144 (alterations adopted and internal quotation marks omitted). Coleman argues that this statement was "possibly the most damaging statement" in the letter because it "effectively accuse[d] [him] of three years of workplace sexual harassment." *Id.* at 1396. According to Coleman, this statement is demonstrably false because (1) it was *he*, not Grand, who ended their relationship; (2) Grand continued to contact him often; (3) Grand still initiated sexual encounters with him; and (4) Grand expressed that she loved him and was frustrated that he did not care about her in the same way. *See id.* at 1396–97.

Grand's statements that she no longer loved Coleman or wanted to be intimate with him – even if such statements could be proven false – simply do not expose Coleman "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induce[] an evil opinion of [him] in the minds of right-thinking persons." *Celle*, 209 F.3d at 177 (internal quotation marks omitted). Because those statements could not possibly "do more than cause discomfort or affront," they are not actionable. *Chau*, 771 F.3d at 127. In any event, Grand conceded in her letter that she "would desperately try to engage [Coleman] so as not to lose [his] mentorship" and continued to "play[] into his game" by agreeing to sleep with him. J. App'x at 39. Grand also forthrightly acknowledged that "[Coleman] broke up with [her]" and even told her not to "bother[]" him anymore. *Id.* at 38.

Grand's statement about workplace sexual harassment, meanwhile, is not actionable for the same reason as the prior statements about Coleman sexually harassing her. That is, a reasonable reader would clearly recognize Grand's statement that Coleman sexually harassed her to be her subjective assessment of disclosed facts regarding a complicated (and at times co-dependent) relationship. *See Gross*, 82 N.Y.2d at 153–54.

**D.     Statements About Coleman's "Never Tak[ing] No for an Answer"**

Coleman also objects to Grand's statement that "[h]e would call [her] in the middle of the night and never take no for an answer."  J. App'x at 145 (internal quotation marks omitted).  Coleman argues that this statement implies that he was calling Grand to request sex, and "during her deposition, [she] could not identify a time when [he] initiated intimacy and refused to take 'no' for an answer."  *Id.* at 1397.  Coleman further asserts that this statement is false because he never physically forced Grand to have sex, as Grand herself admitted.  *See id.* at 1398.

At no point, however, does Grand's letter represent or imply that she was raped or otherwise physically forced to have sex with Coleman.  And Coleman does not deny that he called Grand in the middle of the night; he merely disputes her characterization of his – and her – state of mind when he did so.  But whether Grand correctly characterized Coleman's state of mind is of no moment, since the statement is clearly about how Grand subjectively perceived Coleman's requests.  *See, e.g.*, *Jacobus*, 51 N.Y.S.3d at 342 (explaining that the defendant's "characterization of plaintiff as having 'begged'" was a "loose, figurative, and hyperbolic reference to plaintiff's state of mind and [wa]s therefore[] not susceptible of objective verification").  Once again, considering the challenged

statement in the context of the entire letter, a reasonable reader would view it as a statement of Grand's subjective perception of Coleman's persistence, precisely the sort of opinion statement that is not actionable under New York's defamation laws. *See Gross*, 82 N.Y.2d at 152.

### E. The Implication that Grand Was "Forced to Go" to Coleman's Room

Finally, Coleman argues that Grand falsely insinuated that she was "forced to go to his hotel room" during a 2011 workshop in Chicago when, in fact, she (1) "affirmed in a July[] 2011 email that she didn't mind staying in the same room" as him and that they booked the room together, J. App'x at 2074, (2) "testified in her deposition that Coleman never *physically* forced her" to go to his hotel room, *id.* at 2073, and (3) later admitted that "she had lied to her mother about being forced to have sex with him on that trip," *id.* at 2074.

But Coleman, once again, takes Grand's statements out of context. Grand's own letter acknowledges that she "agreed" to share the room with Coleman before traveling, thereby undermining the interpretation advanced by Coleman. *Id.* at 40; *see Dillon*, 704 N.Y.S.2d at 5 (stressing that "words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader"). Nothing in the letter, moreover, implies that Coleman

physically forced Grand into staying with him in Chicago.  Rather, in context, the letter leads a reasonable reader to conclude that Grand felt she had to sleep with Coleman in order to attend the workshop.  *See Gross*, 82 N.Y.2d at 152.  She may have been wrong about that, but in context, that statement simply reflected Grand's assessment of the facts disclosed in her letter.

## III. DISSENT

Resisting this straightforward application of New York law, the dissent misunderstands our analysis, mischaracterizes the claim that Coleman actually brought, and misapplies New York's distinction between (actionable) statements of fact and (non-actionable) statements of opinion.

Although the dissent insists otherwise, nobody disputes that Grand's letter made "factual claims" that are "either true or false."  Dissent at 2; *see, e.g.*, *supra* at 12–13 (agreeing that Grand's letter includes "facts regarding Grand and Coleman's relationship that are capable of being proven true or false"); *see also* Sp. App'x at 23 (district court characterizing Grand's letter as consisting of statements of "opinion supported by disclosed facts"); Grand Br. at 48 (acknowledging that Grand's letter "does state facts" and "present[s] . . . factual content").  But under New York's strict standard for pleading and proving defamation, we must focus

our analysis on the precise statements that *Coleman* – not the dissent – identifies as defamatory.  *See Gross*, 82 N.Y.2d at 153 ("In [New York] the inquiry, which must be made by the court, entails an examination of the *challenged statements* with a view toward . . . whether the *specific* language in issue has a precise meaning which is readily understood . . . [and] capable of being proven true or false." (internal citations omitted and emphases added)).  And as we have explained, Coleman does not challenge the Grand letter's *factual content* – such as its assertion that Coleman told Grand that she "owed him a 'lifetime of p[*]ssy' for what he had taught [her]," Dissent at 1 (quoting J. App'x at 39) – but only Grand's *subjective characterization* of those facts as sexual harassment.

The dissent nevertheless insists that Grand's use of the label "sexual harassment" to describe her relationship with Coleman is defamatory.  Dissent at 5–7.  Yet Grand's letter made clear that her characterization of Coleman's conduct as sexual harassment was her personal assessment of the specific facts alleged in her letter, and nothing more.  *See* App'x at 36 (expressing Grand's belief that the facts detailed in her letter amounted to "sexual[] harass[ment]" and stating that the purpose of the letter was to "provide a more complete story" and "get everything off [her] chest").  Thus, a reasonable reader would not have perceived

Grand's use of the label "sexual harassment" as a distinct factual assertion or as implying the existence of undisclosed facts, but rather as a "proffered hypothesis" based on the detailed "recitation of . . . facts" in her letter. *Gross*, 82 N.Y.2d at 154. Under New York law, "this class of statements provides a clear illustration of situations in which the full context of the communication signals readers or listeners that what is being read or heard is likely to be opinion, not fact." *Id.* (alterations adopted and internal quotation marks omitted).

The dissent's arguments to the contrary are unpersuasive. For starters, the dissent's attempt to analogize this case to our Title VII hostile-environment jurisprudence shows (if anything) why Grand's characterization of Coleman's conduct as "sexual harassment" should *not* be treated as a distinct factual assertion. In the Title VII context, what matters are the *facts* underlying a harassment claim – not the plaintiff's use of that label. *See, e.g., Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (disregarding the "legal conclusion[]" that the plaintiff "was working in a hostile or abusive working environment" (internal quotation marks omitted)); *Davis v. Carty*, No. 24-cv-6674 (LTS), 2025 WL 843709, at *4 (S.D.N.Y. Mar. 13, 2025) ("Plaintiff's allegations that she was subjected to a 'hostile work environment' and 'harassment' are simply legal conclusions; instead,

Plaintiff must plead facts about what occurred."). And again, Coleman has not challenged as defamatory Grand's proffered factual support for her *conclusion* that Coleman sexually harassed her.

The cases that the dissent relies on for its view that Grand's use of the term "sexual harassment" is independently actionable, Dissent at 8–9, are readily distinguishable. In each of those cases, the defamatory statements either included concrete factual assertions that the plaintiff challenged as untrue or implied undisclosed facts that cast the plaintiff in a negative light. *See Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, at 764–65 (S.D.N.Y. 2025) (statements including unadorned accusation of "sexual assault" and characterization of the plaintiff as a "sexual predator"); *Menaker v. C.D.*, No. 17-cv-5840 (DRH), 2018 WL 5776533, at *4 (E.D.N.Y. Nov. 1, 2018) (statements regarding "unwanted and unwarranted sexual harassment" based on allegedly false accusations of, among other things, inappropriate comments and verbal abuse toward female athletes); *Giuffre v. Maxwell*, 165 F. Supp. 3d 147, 152 (S.D.N.Y. 2016) (statements accusing the plaintiff of having lied about her own prior allegations of sexual assault and sex trafficking); *Thomas H.*, 18 N.Y.3d at 583, 585 (statements accusing the plaintiff of raping a young child on two occasions, including by inserting a finger into the

child's vagina and having sexual intercourse with the victim); *Williams*, 681 N.Y.S.2d at 277–78 ("alleged purported incidents of sexual harassment" challenged as untrue); *Alianza Dominicana, Inc.*, 645 N.Y.S.2d at 30 (allegation of sexual harassment and abuse based on undisclosed facts).  By contrast, New York law is clear that accusations of misconduct "could be regarded as mere hypothesis and therefore not actionable if the facts on which they are based are fully and accurately set forth and it is clear to the reasonable reader or listener that the accusation is merely a personal surmise built upon those facts."  *Gross*, 82 N.Y.2d at 155.  Viewed in context, Grand's use of the term "sexual harassment" fits comfortably within that principle.

Unable to identify a single factual statement from Grand's letter that Coleman actually challenges as false, the dissent seeks refuge in the principle that we "must give the disputed language a fair reading in the context of the publication as a whole."  Dissent at 4 (quoting *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 380 (1995)).  But placing the statements Coleman actually challenges in context makes clear that Coleman only contests Grand's conclusions and subjective characterizations, not the underlying facts.  Coleman, for instance, challenges Grand's conclusion that he "convinced [her] to be intimate with him,"

28

not her factual claim that he had previously "said it was not interesting for him to talk to [her] if there was going to be no sexual interaction." J. App'x at 37–38. Coleman complains about Grand's use of the idiomatic expression "never take no for an answer," but does not deny the underlying factual claim that he became "angry" when she "wouldn't sleep with him" and "would call [her] in the middle of the night." *Id.* at 39. And Coleman, like the dissent, assails Grand's choice of the label "sexual harassment," but without denying that he told Grand that she "owed him a 'lifetime of p[*]ssy' for what he had taught [her]" and that he "looked forward to [her] breaking down so that [she] would come to him." *Id.* The dissent seems to wish that Coleman had brought a stronger case than he did, but we must decide the one before us.[4]

In the end, Coleman and the dissent may disagree with Grand's belief that the facts set forth in her letter rise to the level of sexual harassment. *See* Dissent at 10 (referring to Grand's belief that "Coleman sexually harassed her within their professional relationship"). But under New York law, Grand is free to express that

---

[4] The dissent is wrong to compare Coleman's claim to the one brought in *Gross*. *See* Dissent at 10. The plaintiff in *Gross* challenged as false the specific facts underlying the defendant's allegations of "corrupt" conduct: that the plaintiff "had issued false or misleading reports about deaths occurring within his jurisdiction in order to protect the police." 82 N.Y.2d at 150, 154–56. Coleman, by contrast, challenges Grand's belief that his conduct amounted to sexual harassment but not the disclosed facts on which Grand's opinion was based.

29

view while letting the reader decide whether the disclosed facts support her position.  Because Coleman challenges only Grand's expressions of non-actionable opinion – and not the *facts* supporting those opinions – we cannot agree with the dissent that the district court erred in concluding that Coleman's defamation claim fails as a matter of law.

## IV. CONCLUSION

For these reasons, we find that none of the challenged statements in this case are defamatory.  Accordingly, we **AFFIRM** the district court's judgment.